UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| JASON LEE CALBAUGH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:13-CV-151 |
| | ) | (VARLAN/GUYTON) |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of

the Federal Rules of Civil Procedure, and the Rules of this Court for a report and

recommendation regarding the disposition by the District Court of the plaintiff's Motion For

Judgment On The Administrative Record [Doc. 14], and the defendant's Motion For Summary

Judgment. [Doc. 15]. Plaintiff Jason Lee Calbaugh ("Calbaugh") seeks judicial review of the

Decision of the Administrative Law Judge ("ALJ"), the final decision of the defendant

Commissioner.

## BACKGROUND

Plaintiff was 38 years of age in October, 2011, when the ALJ issued his Decision in this

case. Calbaugh has a high school education. He also attended truck driving school, and he has a

commercial driver's license (Tr. 33). He has work experience as a truck driver (Tr. 34). In fact,

1

Calbaugh asserts that he became disabled on January 11, 2010, when he injured his lower back while exiting from the truck he was driving. Calbaugh was morbidly obese at the time, being 5'11" and weighing 440 pounds, another fact of significance in this case (Tr. 13-14).

The Court has considered the medical evidence in the record, the testimony at the hearing, and all other evidence in the record. The medical history of the Plaintiff and the content of the ALJ's Decision are not in dispute, and need not be repeated here.

The ALJ determined that Calbaugh had the RFC to perform light work, with certain postural restrictions, the most central to this appeal being: "he can sit, stand, or walk as necessary for comfort throughout an 8 hour workday." Calbaugh, according to the ALJ, also is "moderately" limited in this ability to maintain concentration, persistence, and pace due to his complaints of chronic back pain (Tr. 14).

The parties have filed Memoranda [Docs. 14-1, 16]. Calbaugh also filed a Reply Brief [Doc. 17].


## STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and the ALJ's findings are supported by substantial evidence in the record, the decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42

2

U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the

merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if the ultimate decision was supported by substantial evidence and the error did not deprive the claimant of an important benefit or safeguard. See id. at 547.

On review, Plaintiff bears the burden of proving entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## POSITIONS OF THE PARTIES

Calbaugh alleges that he has been disabled since January, 2010, due to back pain, along with weakness and numbness of his right leg, which requires him to use a cane (Tr. 34-37). He reports that he "can not sit, stand, or walk for any period of time because of pain" (Tr. 150).

Calbaugh argues that the ALJ committed error by violating the "Treating Source Rule," 20 C.F.R. § 404.1527(d)(2). He asserts that the ALJ failed to properly consider and weigh the medical opinions of treating physician Dr. Miriam Tedder, M.D. ("Dr. Tedder").

Dr. Tedder, a general practitioner, examined Calbaugh approximately a week after Calbaugh injured his back in January, 2010. She ordered x-rays, which showed no evidence of bone fracture or disk problems ("disks are preserved"). Dr. Tedder's notes reflect that she advised Calbaugh that "this must be all muscular – consider PT (physical therapy)." Dr. Tedder prescribed muscle relaxers (Tr. 203). [1]

---

[1] At the September, 2011 hearing, Calbaugh confirmed that he was still taking muscle relaxers for his back (Tr. 36).

4

Nonetheless, in November, 2010, Dr. Tedder stated on a Medical Source Statement that Calbaugh had degenerative disc disease, joint disease and depression. She opined that Calbaugh was in constant lower back pain, and that he was moderately limited in his ability to deal with work stress. Dr. Tedder also opined that Calbaugh could only sit or stand for 15 minutes at a time, due to pain, and that Calbaugh would need more than 6 hours of "resting / lying down or reclining in a supine position" during an 8 hour work day (Tr. 227-234).

In July, 2011, Dr. Tedder completed another Medical Source Statement (Tr. 242-247). Dr. Tedder opined that Calbaugh could not lift or carry any weight, that he needed a cane to walk, that he could not sit up, and that he could only sit, walk or stand for 1 hour of an 8 hour workday.

The ALJ gave "no weight" to the "extreme" restrictions in the opinions of Dr. Tedder, "as they are completely unsupported by the weight of the objective medical evidence of record, which fails to reveal the presence of a medically determinable back impairment, or any other impairment, that could reasonably be expected to necessitate such extensive residual functional capacity limitations" (Tr. 18). The ALJ found that Dr. Tedder's opinions were "clearly unsupported by her objective diagnostic and clinical findings, which simply fail to show the presence of a medically determinable back impairment. . ." (Tr. 18).

Calbaugh argues that the ALJ committed error by not incorporating Dr. Tedder's limiting restrictions in the RFC. The Commissioner argues that the ALJ adequately discussed Dr. Tedder's opinions and gave sufficient explanation for the weight afforded to them.

Beyond the issue of Dr. Tedder, Calbaugh argues: (1) that the ALJ failed to resolve conflicts between the medical record and the RFC; (2) that the ALJ erred in addressing mental

5

limitations; (3) that the ALJ erred in not considering Calbaugh's obesity; and (4) that the ALJ erred in evaluating Calbaugh's credibility. The Defendant argues that the ALJ committed no errors as alleged.

## ANALYSIS AND BASIS FOR RECOMMENDATION

For the reasons that follow, the Court recommends that summary judgment in favor of the Commissioner is appropriate in this case.

### A. Evaluation of Dr. Tedder's Opinions

The Court finds that the ALJ properly reviewed and evaluated the medical evidence, giving good explanations for the weight afforded to the medical opinions of record.

Under the treating physician rule, "the Commissioner has mandated that the ALJ 'will' give a treating source's opinion controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record.'" Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011) (quoting 20 C.F.R. § 404.1527(d)(2)).[2] If an ALJ decides not to give the opinion of a treating physician controlling weight, "he must then balance the following factors to determine what weight to give it: 'the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source.'"

---

[2] Although the ALJ questioned whether Dr. Tedder should be considered a "treating physician," given that she only treated Calbaugh on three occasions for back injury / pain (Tr. 18), the Court will consider Dr. Tedder to be a "treating physician" for this analysis.

Id. (quoting Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)). The ALJ has a clear duty to "always give good reasons in [the] notice of determination or decision for the weight [it] give[s] [a] treating source's opinion." 20 C.F.R. § 404.1527(d)(2). The good reasons given must always be supported by evidence of record and must be "'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Cole, 661 F.3d at 937 (quoting Soc. Sec. Rul. No. 96-2p, 1996 SSR LEXIS 9, at *12 (Soc. Sec. Admin. July 2, 1996)).

The purpose behind the requirement that good reasons be given is "to safeguard the claimant's procedural rights[,]" and "is intended 'to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that [ ]he is not.'" Cole, 661 F.3d at 937-38 (quoting Wilson, 378 F.3d at 544).

"A finding that a treating source medical opinion . . . is not entitled to controlling weight [does] not [mean] that the opinion should be rejected." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 408 (6th Cir. 2009). "In addition to balancing the factors to determine what weight to give a treating source opinion denied controlling weight, the agency specifically requires the ALJ to give good reasons for the weight actually assigned." Cole, 661 F.3d at 938.

"On the other hand, opinions from nontreating and nonexamining sources are never assessed for 'controlling weight.'" Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 376 (6th Cir. 2013). These are instead weighed "based on the examining relationship (or lack thereof),

specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling." Id. (citing 20 C.F.R. § 404.1527(c)).

Dr. Tedder provided opinions which indicated that Calbaugh had medical conditions and related limitations which arguably support a finding of disability. The Court, however, finds that the ALJ properly addressed, evaluated, and assigned weight to Dr. Tedder's opinions. Importantly, the ALJ explained that Dr. Tedder's opinions were not supported by the medical evidence in the record: x-ray results which were all completely within normal limits; treatment notes; findings on examination; sparse medical treatment, no physical therapy, or prescription pain killers; the treatment only by muscle relaxers; the admonition to exercise and lose weight; and activities of daily living (Tr. 15-18).

The ALJ also showed that Celia Gulbenk, M.D. ("Dr. Gulbenk"), a non-examining state agency physician, did an assessment in this case. Dr. Gulbenk reviewed the medical record and concluded that Calbaugh has the RFC to perform slightly less than a full range of medium exertional work, with the ability to stand and walk limited to "at least" 2 hours during an 8 hour workday (Tr. 205-212).

Therefore, the Court finds that substantial evidence supports the Commissioner's decision that Plaintiff was not disabled during the relevant period, because he could perform light work, with certain restrictions.

**B. The ALJ properly Evaluated The Medical Record**

Calbaugh alleges that the ALJ failed to reconcile a purported inconsistency between Dr. Gulbenk's opinion that Calbaugh could stand or walk for at least 2 hours, and up to 3 hours, in an 8-hour workday, and the ALJ's RFC assessment, which Plaintiff alleges implicitly included a finding that Calbaugh could stand or walk for most of the workday.

The Court, however, finds, that the ALJ properly considered the opinion of Dr. Gulbenk and substantial evidence supports the ALJ's decision to give sufficient weight to the opinion. State Agency consultants are considered experts in the Social Security disability programs and their opinions may be entitled to great weight if the evidence supports them. See 20 C.F.R. §§ 404.1527(f)(2), 416.927(f)(2); SSR 96-6p.

The ALJ gave significant weight to Dr. Gulbenk's opinion, because she reviewed the bulk of the medical evidence and because the opinion was well supported by the lack of objective diagnostic findings (Tr. 17-18).

Moreover, the ALJ explained why he was assessing a more restrictive RFC than the slightly reduced range of medium work assessed by Dr. Gulbenk. The ALJ explained that it was due to Calbaugh's morbid obesity, and because he was giving Calbaugh the benefit of some doubt with respect to his testimony as to his limitations (Tr. 17-18).

**C. The ALJ Properly Evaluated The Plaintiff's Mental Limitations**

Calbaugh argues that the ALJ did not conduct a "function-by-function" assessment of Plaintiff's work-related mental limitations. The Court finds that this argument lacks merit, for several reasons. First, Plaintiff never alleged, nor did the ALJ assess, a severe mental

9

impairment (Tr. 13, 145)  Second, Calbaugh did not allege that he had work-related mental limitations.  Third, the medical record does not show that any physician assessed any mental restriction or limitation.  According to SSE 96-8p, "[w]hen there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity."  Finally, the Court agrees with the Defendant that SSR 96-8p does not require an ALJ to include a function-by-function discussion in his decision of a claimant's maximum capacity to perform each work-related activity.  See Delgado v. Comm'r of Soc. Sec., 30 F.App'x 542, 547-48 (6th Cir. 2002).

The ALJ included in the RFC assessment a moderate limitation in ability to maintain concentration, persistence, and pace due to complaints of chronic pain, which acknowledged that the ALJ was giving Plaintiff some benefit of the doubt regarding his allegations of pain.  The Court finds that Plaintiff failed to allege or show that the moderate limitation resulted in additional restrictions on his ability perform basic work activities.

### D.  The ALJ's Evaluation Of Calbaugh's Obesity

Calbaugh argues that the ALJ erred in considering the effect of his obesity on his other physical conditions.  SSR 02-1p explains the agency's policy on the evaluation of obesity.

> An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment.  Individuals with obesity may have problems with the ability to sustain a function over time.

10

The Sixth Circuit has stated that SSR 02-1p does not offer "any particular procedural mode of analysis for obese disability claimants." Bledsoe v. Barnhart, 165 F. App'x 408, 412 (6th Cir. 2006). Instead, SSR 02-1p provides that "obesity, in combination with other impairments, 'may' increase the severity of the other limitations." Id. at 412.

The Court finds that the ALJ sufficiently accounted for the effect that obesity has on Calbaugh's ability to do light work. The Defendant correctly argues that the ALJ discussed obesity multiple times throughout his decision. The ALJ noted: that Calbaugh weighed 440 pounds; that he was unable to fit in MRI machines; that Dr. Tedder has repeatedly remarked on his weight and indicated that Plaintiff was morbidly obese; and that the Roane County Health Department nurse practitioner advised Plaintiff to lose weight and exercise (Tr. 14-18). At step 2, the ALJ specifically concluded that Plaintiff's "morbid obesity, with a height of 5'11" and a weight of 440 pounds" constituted a "severe impairment," meaning that it had a more than minimal effect on Plaintiff's ability to perform work activities (Tr. 13).

At step 3, the ALJ considered Calbaugh's obesity in deciding whether his impairments met or equaled a listed impairment (Tr. 13). Where the ALJ specifically refers to a combination of impairments in finding that the Plaintiff does not meet the listings, an ALJ satisfies his duty to consider the effect of the impairments in combination. See Loy v. Sec'y of Health & Human Servs., 901 F.2d 1306, 1310 (6th Cir. 1990). Here, the ALJ found Calbaugh did not have an impairment or combination of impairments that met or equaled a listed impairment (Tr. 13).

In his RFC discussion, the ALJ limited Calbaugh to a reduced range of light exertional work based on Plaintiff's obesity:

> because the weight of the medical evidence of record persuasively suggest[ed] that it [was] the extent of his morbid obesity . . . [that

was] primarily responsible for his allegations of chronic back pain that radiate[d] into his right hip and right lower extremity, causing numbness in his right leg and foot, particularly in view of the lack of any objective diagnostic evidence of a medically determinable back impairment, or any other impairment, that could reasonably be expected to cause the degree of pain and other symptoms alleged.

The ALJ did consider and evaluate Calbaugh's obesity in the Decision. The ALJ's evaluation was in accordance with the regulations and SSR 02-1p. Accordingly, the Court finds that the ALJ adequately accounted for the effect that obesity had on Plaintiff's ability to perform light work.

### E. The ALJ's Credibility Determination

The ALJ considered Plaintiff's statements and testimony regarding his alleged disabling limitations (Tr. 14-18). Ultimately, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible, and that the evidence supported an RFC of a reduced range of light work (Tr. 14-18). The Plaintiff argues that the ALJ was not sufficiently specific in his reasons for finding Calbaugh's allegations of disabling pain not to be totally credible.

The ALJ, however, evaluated the medical evidence in the record in assessing Plaintiff's credibility. The ALJ discussed the normal x-rays of Plaintiff's hips and lumbar spine, as well as some normal clinical findings such as straight leg raises and normal gait without the use of an assistive device. The ALJ also discussed treatment notes indicating that Plaintiff was treated conservatively with muscle relaxers (Tr. 14-18). The nurse practitioner's notes indicated that Plaintiff was capable of exercise to lose weight (Tr. 17). The ALJ also considered that while

12

Plaintiff testified that he had injured his back in January of 2010 and had been taken by ambulance to the emergency room, there was no medical evidence to support this testimony, which "case[] a shadow on his credibility for truthfulness" (Tr. 16). In short, the medical evidence undermined Plaintiff's credibility, and the ALJ was justified in resolving inconsistencies between the evidence and Plaintiff's allegations of disabling limitations against him. See 20 C.F.R. §§ 404.1529(1)-(2), 416.929(1)-(2) (permitting ALJ to evaluate claimant's credibility based on the objective medical evidence and statements from the medical sources).

The ALJ also considered Plaintiff's activities and concluded that they were not consistent with Plaintiff's allegedly incapacitating symptoms, which further undermined his credibility (Tr. 17, 151-154). For instance, Plaintiff was able to drive, perform most personal care tasks, socialize with friends and relatives and talk on the telephone, prepare simple meals, watch TV, and manage money (Tr. 17, 151-154). Significant deference is given to an ALJ's credibility finding. Cruse v. Commissioner of Soc. Sec., 502 F.3d 532, 542 (6th Cir. 2007); "[A]n ALJ's credibility determinations about the claimant are to be given great weight. . .".

The evidence discussed above and by the ALJ provides substantial evidence to support the ALJ's finding that Plaintiff's allegations were not totally credible and to support the ALJ's assessment of Plaintiff's RFC.

It is **RECOMMENDED** (1) that the Plaintiff's Motion For Judgment On The

Administrative Record [Doc. 14] be **DENIED**; and (2) that the Defendant's Motion For

Summary Judgment [Doc. 15] be **GRANTED**.[3]

Respectfully submitted,

s/ H. Bruce Guyton
United States Magistrate Judge

---

[3]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).

14